**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **WALDEMAR J. WOJCIK, as Chapter 7 Trustee of Hudson & Keyse, LLC** ) ) ) | **CASE NO.1:12CV2960** |
| **Plaintiff,** ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **vs.** ) ) | |
| **HUDSON FUNDING LLC, ET AL.,** ) ) | **OPINION AND ORDER** |
| **Defendants.** ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motion of Defendants George Anthony Skestos, George A. Skestos, Ellen Hardymon, John F. Havens, and D. Scott Clarke and Hudson Funding, LLC Seeking Order Requiring Plaintiff to Advance Fees and Expenses Incurred by Moving Defendants (ECF # 7).  For the following reasons, the Court denies Defendants' Motion.

On September 7, 2010, Hudson & Keyse, LLC (H&K) filed for bankruptcy under Chapter 7 of the Bankruptcy Code and Waldemar J. Wojcik was appointed Trustee of debtor estate.   The Trustee now seeks to avoid and recover transfers made to Defendant Hudson Funding LLC as well as other amounts.  In addition, the Trustee seeks to recover damages from

1

the above named individuals who comprised the Management Committee of H&K.   The Trustee claims that these individuals violated their fiduciary duties to H&K resulting in damages to H&K.

According to the Complaint, H&K was a debt buying/collecting, limited liability company incorporated in Delaware with a principal place of business located in Painesville, Ohio.  Pursuant to a 2009 Operating Agreement, the Management Committee had "full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company."  The Complaint alleges that George Anthony Skestos, George A. Skestos, Ellen Hardymon, John F. Havens,  D. Scott Clarke and Steven Alonso were all members of the Management Committee.

The Complaint further alleges that in May 2007 H&K entered into a Loan Agreement with Charter One Bank, N.A.  Under the terms of the Loan Agreement, H&K granted Charter One a security interest in, and collateral assignment of, H&K's assets, including H&K's interest in debt receivables.  On August 28, 2009, H&K agreed to purchase debt receivables from HSBC with a face value of $154,217,192.52 for $3,546,995.43.  That same day, H&K sold the debt receivables to Defendant Hudson Funding LLC ("Funding") for the same amount H&K purchased the debt receivables from HSBC.  Funding was not permitted by law to engage in collections work.

On September 23, 2009, H&K engaged in the same type of transaction, buying debt receivables from HSBC and selling them to Funding.  Because Funding could not legally collect debts, H&K and Funding entered into a Collection Agreement wherein H&K agreed to perform collection work for the benefit of Funding.

2

On October 22, 2009, H&K's lenders wrote a letter to H&K's counsel expressing concerns over H&K's management, transactions involving related parties and noting the unfavorable terms of H&K's collection and servicing agreements. Less than one year later, H&K filed for bankruptcy protection.

On January 28, 2013, Defendants George Anthony Skestos, George A. Skestos, Ellen Hardymon, John F. Havens, and D. Scott Clarke filed their Motion to Advance Fees and Expenses with this Court. According to Defendants, the Operating Agreement of H&K contains a clause requiring H&K to advance attorney fees and expenses to the individual Management Committee members.

In Section 4.4 of the Operating Agreement it reads:

Reasonable third-party expenses (including reasonable attorney's fees) incurred by an indemnified person in defending any Claim shall be advanced by the Company to the indemnified person or to the third-party as due and in advance of the final disposition of the Claim and a determination of whether the indemnified person is entitled to indemnification under this Section 4.4, if the indemnified person commits (in form and substance satisfactory to the appropriate persons under clauses (w) through (z) above) to repay the advances if the indemnified person is ultimately determined not to be entitled to indemnification under this Section 4.4.

Defendants submitted requests for advancement of fees in the form of Undertakings, to Plaintiff which were subsequently refused.

Defendants contend the plain language of the Agreement mandates advancing fees and costs to defend against Plaintiff's claims. Defendants further contend that Delaware law, applicable in this case pursuant to the terms of the Operating Agreement, holds such clauses valid and enforceable.

Defendant Funding contends the Collection Agreement contains an indemnification and

advancement of fees and expenses clause requiring H&K to advance litigation expenses for claims against Funding.  Section 7a of the Collection Agreement reads

> Agency [(Hudson & Keyse)] agrees to indemnify and hold Company [(Hudson Funding)],… its officers, directors and employees harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including reasonable counsel fees and disbursements) incurred or suffered by Company reason of . . . the breach of any representation, warranty or covenant made by Agency herein. At its sole option, Company shall have the right to require Agency to assume the defense of any such claim, action, suit or other actual or threatened proceeding and to directly pay for all losses, judgments, damages, expenses or other costs (including all counsel fee and disbursements of counsel) which may be imposed.

Plaintiff contends that Defendants are effectively asking to be made administrative claimants and to be given a priority over unsecured creditors.  However, the Trustee argues that the individual Defendants all resigned their positions prior to the filing of the bankruptcy and their claims are all pre-petition claims.  Therefore, they are simply creditors whose claims cannot be given priority over other creditors.  The Trustee further argues that Fundings' indemnification claim arises from the Collection Agreement, a prepetition agreement, which is an executory contract that has been rejected by the Trustee.

Upon review of the parties' submissions, the Court denies Defendants' Motion.  The Court finds Defendants' Motion seeks to have the Debtor estate advance funds for Defendants' litigation defense expenses, including attorney fees.  There is no dispute that Delaware law supports advancement of fees clauses in contracts.  However, Defendants have provided no caselaw authorizing such advancement when the corporation or company that was a party to such an agreement is in bankruptcy.  Nor do Defendants cite any caselaw granting such prepetition contractual obligations priority over unsecured creditor claims.

The Bankruptcy Code provides for a statutorily mandated systematic order of priority of

distributions of the Debtor's estate. 11 U.S.C. § 726 reads:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed--

> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title....
>
> (2) second, in payment of any allowed unsecured claim...

Section 507, in turn, establishes priority for domestic support obligations, administrative expenses of the trustee under 503(b), other administrative expenses under 503(b), unsecured claims of a Federal Reserve bank, specific enumerated fees and charges assessed against the estate under chapter 123, followed by unsecured claims.

Section 503(b) allows for the payment, after notice and hearing, of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate." These include things such as "wages, salaries and commissions for services rendered after the commencement of the case," taxes, and certain recoveries permitted creditors.

As the Trustee points out, these administrative expenses are entitled to a priority over unsecured, prepetition claims. See *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.* 530 U.S. 1, 5 (2000).

So, the question becomes whether prepetition, contractual obligations for advancement of fees and indemnification constitute an administrative expense entitled to priority. The Sixth Circuit has held, "a debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *In re Eagle-Picher Industries, Inc.* 447 F.3d 461, 464 (6th Cir., 2006) *quoting Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.),* 126 F.3d

811, 816 (6th Cir.1997). Defendants have the burden to prove their request for advancement of fees constitutes an administrative expense. See *McMillan v. LTV Steel, Inc.* 555 F.3d 218, 226 (6th Cir. 2009). Defendants must prove their claim for administrative expense by a preponderance of the evidence. *In re HNRC Dissolution Co.,* 343 B.R. 839, 843 (Bankr.E.D.Ky.2006).[1]

As a bankruptcy court in Kentucky described, claimants to funds from a debtor must demonstrate their entitlement to a priority as follows:

> The 'benefit of the estate' test limits administrative claims to those where the consideration for the claim was received during the post-petition period. In addition, [t]he claimant must demonstrate that the benefit is more than a speculative or potential benefit. A debt is not entitled to administrative expense priority treatment simply because the right of payment arise post-petition; the claimant must demonstrate the benefit that inured to the estate. The Sixth Circuit has observed that "[s]ection 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." (Internal citations omitted).

*In re Liberty Fibers Corp.,* 383 B.R. 713, 717 (Bkrtcy.E.D.Tenn., 2008).

There is no dispute that the Defendant Committee members all resigned approximately one year prior to Hudson & Keyse filing for bankruptcy and that the Operating Agreement and Collection Agreements were all prepetition agreements that did not involve the bankruptcy estate. Thus, Defendants cannot claim that the contractual obligation to advance fees and indemnify arose from a transaction with the bankruptcy estate nor did these obligations provide a

---

[1] Defendants argue in their Reply that the cases supporting the benefit to the estate test all arise out of Chapter 11 or 13 bankruptcies. The Court is unaware of, and the parties present no caselaw holding, that the test would not apply to Chapter 7 bankruptcies. Bankruptcy courts within this Circuit have applied the test to Chapter 7 debtors. See *In re Moore*, 109 B.R. 777 (Bkrtcy.E.D.Tenn.,1989) and *In re Liberty Fibers Corp.*383 B.R. 713 (Bkrtcy.E.D.Tenn.,2008).

benefit to the bankruptcy estate. Furthermore, Defendants have offered no evidence in support of a claim for priority either as administrative expenses or otherwise. Therefore, they have failed to meet their burden to show their claims for advancement of fees and indemnification by a preponderance of evidence. In the absence of such a showing, the Court will not grant a priority to Defendants over unsecured creditors.

Finally, the Trustee has asserted that he has rejected the Collection Agreement as an executory contract and Defendants do not challenge nor contest this representation.

Therefore, for the foregoing reasons, the Court denies Defendants' Motion for Advancement of Fees and Expenses.

IT IS SO ORDERED.

   /S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge