**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **WALDEMAR J. WOJCIK,** ) | **CASE NO.1:12CV2960** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| **Vs.** ) | |
| ) | |
| **HUDSON FUNDING LLC ET AL.,** ) | <u>**OPINION AND ORDER**</u> |
| ) | |
| **Defendant.** ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF # 12).  For the following reasons, the Court denies Defendants' Motion.

Plaintiff Waldemar J. Wojcik, Chapter 7 Trustee of H & K, LLC ("H & K") brings this action seeking to avoid certain transfers alleged to be fraudulent under 11 U.S.C. § 548(A)(1)(B) and 11 U.S.C. § 544(B) against Defendant Hudson Funding LLC ("Funding").  The Trustee's Complaint further alleges a Breach of Fiduciary Duty claim against George A. Skestos and members of the Management Committee, and Recovery of Avoided Transfers under 11 U.S.C. § 550 against Funding and individually named Defendants.

The Trustee seeks to avoid and recover transfers made to Defendant Hudson Funding

1

LLC as well as other amounts.  In addition, the Trustee seeks to recover damages from individuals who comprised the Management Committee of H & K.   The Trustee claims that these individuals violated their fiduciary duties to H & K resulting in damages.

According to the Complaint, H & K was a debt buying/collecting, limited liability company incorporated in Delaware with a principal place of business in Painesville, Ohio.  Pursuant to a 2009 Operating Agreement, the Management Committee had "full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company."  The Complaint alleges that George Anthony Skestos, George A. Skestos, Ellen Hardymon, John F. Havens,  D. Scott Clarke and Steven Alonso were all members of the Management Committee while George Anthony Skestos and George A. Skestos were also members of Defendant Hudson Funding LLC ("Funding").

The Complaint further alleges that in May 2007,  H & K entered into a Loan Agreement with Charter One Bank, N.A as Lead Arranger, Sales Book Runner and Administrative Agent for itself and other lenders identified in the Loan Agreement.  Under the terms of the Loan Agreement, H & K granted Charter One, for the benefit of all the lenders, a security interest in, and collateral assignment of H & K's assets, including H & K's interest in debt receivables.  On August 28, 2009, H & K agreed to purchase debt receivables from HSBC with a face value of $154,217,192.52 for $3,546,995.43.  That same day, H & K sold the debt receivables to Funding for the same amount H & K purchased the debt receivables from HSBC.  Funding was not permitted by law to engage in collections work.

On September 23, 2009, H & K engaged in the same type of transaction, buying debt receivables from HSBC with a face value of $100,001,716.78 for $2,300,039.49.  H & K then

sold the newly acquired debt receivables to Funding.  H & K did not disclose to HSBC the sale of the receivables to Funding even though the debt receivables collateralized H & K's obligations to HSBC and the various lenders represented by HSBC.

Because Funding could not legally collect debts, H & K and Funding entered into a Collection Agreement wherein H & K agreed to perform collection work for the benefit of Funding.  Under the Collection Agreement, H & K provided all services necessary to perform collection work and received $400 per account for legal costs and 25% of all collections paid to Funding.  Funding kept 75% of the proceeds while performing virtually no services.

On October 14, 2009, HSBC sent a letter to H & K informing it that a default had occurred.  HSBC refused to make additional advances to H & K.

On October 22, 2009, H&K's lenders wrote a letter to H & K's counsel expressing concerns over H & K's management, transactions involving related parties and noting the unfavorable terms of H & K's collection and servicing agreements.  Shortly thereafter, H & K agreed to retain a Chief Restructuring Officer.  In March 2010, the lenders sold their rights under the Loan Agreement.  On August 31, 2010, Funding terminated the Collection Agreement and on September 9, 2010, H & K filed for bankruptcy.

### **Trustee's Claims**

According to the Complaint, H & K entered into the HSBC, Funding and Collection agreements within two years of its Petition Date.  H & K's transfers of debt receivables under the Funding Agreements and agreement to incur expenses under the Collection Agreement involved transfers of interest in H & K property.  Because H & K received less than reasonably equivalent value under these agreements they constitute fraudulent transfers and obligations which may be

avoided.

Likewise, the Trustee contends he may avoid any transfer of H & K's interest in property that is voidable under applicable law by a creditor holding an allowable unsecured claim or an unsecured claim that is not allowable under 502(e) of the Bankruptcy Code.

The Trustee further alleges George A. Skestos breached his fiduciary duty as a Manager and controlling member of H & K by acting in concert with his son George Anthony Skestos to improperly usurp a corporate opportunity belonging to H & K, by diverting H & K's opportunity to purchase HSBC accounts to Funding. This diversion deprived H & K of substantial revenue because H & K did all the collection services but received only one quarter of the revenue stream.

The Trustee also alleges a cause of action to recover the alleged fraudulent transfers under 11 U.S.C. §550 from Funding, Skestos and other transferees.

Finally, the Trustee alleges breach of fiduciary claims against individually named Members of the Management Committee and Clarke as an officer of H & K for failing to act in good faith for the benefit of H & K. The Trustee contends the Funding Agreements furthered the interests of Funding to the detriment of H & K. By approving the Funding Agreements, the Management Committee willfully violated their fiduciary duties. Furthermore, Clarke breached his fiduciary duties by maintaining staff in excess of need and mischaracterized Lenders' response to proposed joint ventures and outstanding asset values and nature of Funding Agreements to the Management Committee.

**Standard of Review**

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. C.iv. P. 12(c). A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Almedares v. Palmer*, 284 F. Supp. 2d 799, 802 (N.D. Ohio 2003). "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." *CHG Transport Inc. v. Quabecor World*, *Inc.*, 261 Fed. App'x 817, 819 (6th Cir. 2008), (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal* 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
> *Id*. at 679.

Lastly, a Rule 12(c) motion "is granted when *no material issue of fact* exists and the

party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added). When deciding a Motion for Judgment on the Pleadings a court may consider the Complaint and "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n* 528 F.3d 426, 430 (6th Cir. 2008).

### **Defendants' Arguments**

According to Defendants, they are entitled to dismissal of the Trustee's claims because the transactions at issue resulted in no negative impact on H & K; instead, they provided income stream and business opportunity. Therefore, the Trustee has stated no cognizable claim against Defendants.

As stated in the Trustee's Complaint, H & K received the exact same amount from Funding in the Funding Agreements H & K expended in the purchase of the debt receivables from HSBC. Not only did H & K receive equivalent value in the transactions, it further obtained an income stream, receiving 25 % of amounts collected, plus a fee per each transaction.

Furthermore, Defendants argue the Trustee's Complaint fails to allege facts demonstrating H & K was insolvent at the time of the transfers or that the transfers negatively affected H & K's finances. Instead, the Complaint merely recites the elements, thus failing to demonstrate a plausible claim under *Twombley/Iqbal*.

Furthermore, H & K's own representations at the time of the transactions stated it was solvent at the time of the transactions now alleged to be fraudulent.

Because Plaintiff cannot demonstrate a fraudulent transfer his claims at Counts IV and V for recovery of avoidable transfers necessarily fail as a matter of law.

Defendants also contend Plaintiff's claim for breach of fiduciary duty by George Skestos Sr., for diverting HSBC debt receivables from H & K to Funding, fails because Skestos Sr. has never been a member of Funding.  Furthermore, the individual members cannot be liable for a breach of their fiduciary duties because, under Delaware law, which applies to the claims in this case, only willful conduct may result in a breach of fiduciary duty when members are governed by an operating agreement limiting fiduciary duties.  The Operating Agreement at issue specifically limits liability of the Management Committee to willful misconduct.  Since the Complaint only alleges conclusory statements of willfulness without supporting facts, Trustee's claims for breach of fiduciary duty fail as a matter of law.  Furthermore, Defendant Committee Members' actions are protected by the business judgment rule.

### Trustee's  Response

The Trustee argues that the Complaint alleges sufficient facts in accordance with *Twombley* and *Iqbal*.  The Complaint alleges that H & K sold the debt receivables acquired from HSBC to Funding for no profit, then agreed to service the debt collections in exchange for only 25% of the collected amounts while Funding retained 75% for doing nothing.  Furthermore, the Management Committee, which possessed full authority to manage and control the business of H & K, had one or more members who were members of Funding, and permitted the challenged transactions which benefitted Funding to the detriment of H & K.  Also, the Complaint specifically alleges that at the time of the transfers H & K was insolvent.

Also, Plaintiff contends the individual Defendants may not rely on the business judgment

rule because they were not disinterested members since at least one Defendant was a member of Funding.  Furthermore, Defendants admit they did not even consider the allegedly fraudulent transactions, therefore, they cannot contend they acted on an informed basis.  Finally, the transactions at issue were not in the ordinary course of business because these transactions were unique.

### **Law and Analysis**

When analyzing a claim that a Debtor did not receive reasonably equivalent value, the Sixth Circuit has held the question to be largely a factual one.  "Determining reasonably equivalent value is a question of fact and considerable latitude must be allowed to the trier of facts. *(Citations omitted).* Whether a transfer is made for reasonably equivalent value is a question of fact to be determined from all the evidence in a particular case." *(Citation omitted). In re Gabor* 280 B.R. 149, 162 (Bkrtcy. N. D. Ohio, 2002).  See also *In re Wilkinson,* 196 Fed. App'x 337,341 (6th Cir. 2006).  Thus, in considering the issue, the Court must examine the evidence in the case.  Because Plaintiff has alleged sufficient facts to state a claim for fraudulent transfer, the Court finds the issue is not properly addressed on a Motion for Judgment on the Pleadings.  In addition, Defendants claims they fronted the money to H & K to purchase the debt receivables from HSBC.  This further presents issues concerning the interrelationship between H & K and Funding, its officers, and the nature and particulars of the transactions, all militating against dismissal at this stage of the proceedings.

Furthermore, with respect to the Trustee's claims for breach of fiduciary duty, he has alleged that Defendants acted willfully, that at least one, if not all, had conflicts of interest and that all failed to fulfill their obligations to H & K by considering the transactions.  Nor does the

business judgment rule warrant dismissal at this stage of the proceedings. "[W]hen it is shown that a board action is not the product of an informed, disinterested, and independent board, the business-judgment-rule presumption is overcome..." *In re Dwight's Piano Co.* 424 B.R. 260, 284 (S.D.Ohio,2009) (relying on Delaware law). Because Plaintiff has alleged the individual Management Committee Defendants were not disinterested and did not take the time to become informed on the transactions at issue, they cannot rely on the business judgment rule defense on a Motion for Judgment on the Pleadings. All the above present issues of fact that militate against determining the case on a Motion for Judgment on the Pleadings as well.

Therefore, for the foregoing reasons, the Court denies Defendants' Motion for Judgment on the Pleadings. The Court holds that converting it to a summary judgment at this point is not appropriate since no discovery has been conducted. The issues raised by Defendants may be addressed at a later date once discovery has been conducted.

IT IS SO ORDERED.

                                                s/ Christopher A. Boyko
                                                CHRISTOPHER A. BOYKO
                                                United States District Judge

Dated: September 20, 2013